UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA B., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. CV 19-7817-SP <br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On September 10, 2019, plaintiff Gloria B. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the

1

Administrative Law Judge ("ALJ") properly rejected the opinion of a treating physician; and (2) whether the ALJ properly rejected plaintiff's subjective symptom testimony. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-8; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-13.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly rejected the opinion of plaintiff's treating physician, and properly discounted plaintiff's subjective symptom testimony. The court therefore affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 62 years old on the alleged disability onset date. *Id.* at 55. She has a sixth grade education from the Philippines, and has past relevant work as a wire harness assembler, cafeteria food service worker, and printed circuit board assembler. *Id.* at 37-38, 49.

On November 18, 2015, plaintiff filed an application for DIB, alleging an onset date of January 7, 2015 due to cervical spine disorder, right and left shoulder pain, right and left wrist pain, both hands and finger pain, arthritis, and carpal tunnel in both hands and arms. *Id.* at 55-56. The Commissioner denied plaintiff's application initially and on reconsideration, after which she filed a request for a hearing. *Id.* at 55-65, 68-81, 123.

On July 17, 2018, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 18-20, 24-48, 50-51, 53. The ALJ also heard testimony from Jacqueline Benson-DeJong, a vocational expert. *Id.* at 49-52. On October 11, 2018, the ALJ denied plaintiff's claim for benefits. *Id.* at 87-96.

Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff had not engaged in substantial gainful activity between January 7, 2015, the alleged onset date, and March 31, 2018, the date last insured. *Id*. at 89.

At step two, the ALJ found plaintiff suffered from the severe impairments of spine disorders and carpal tunnel syndrome. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id*.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that through the date last insured, plaintiff had the RFC to perform light work with the limitations that she could: occasionally crawl and climb ladders, ropes, and scaffolds; occasionally push and pull with bilateral upper extremities; and frequently handle, finger, and feel bilaterally. *Id*. at 90.

The ALJ found, at step four, that through the date last insured, plaintiff was able to perform her past relevant work as a cafeteria food service worker and printer assembler both as she actually performed them and as generally performed. *Id*. at 95.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id*. at 102-07, 170-73. The ALJ's decision stands as the final decision of the Commissioner.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Properly Rejected Dr. Yung's Opinion

Plaintiff argues the ALJ erred by rejecting the opinion of treating physician Dr. Alarick Yung. P. Mem. at 2-6. Specifically, plaintiff argues the ALJ failed to provide legally sufficient reasons for rejecting Dr. Yung's opinion that plaintiff was limited to lifting no more than five pounds. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

1 | substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific
2 | and legitimate reasons supported by substantial evidence for rejecting the
3 | contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a
4 | non-examining physician, standing alone, cannot constitute substantial evidence.
5 | *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v.
6 | Comm'r*, 169 F.3d 595, 602 (9th cir. 1999); *see also Erickson v. Shalala*, 9 F.3d
7 | 813, 818 n.7 (9th Cir. 1993).

### 1. Dr. Gregg Kasting

On January 12, 2015, Dr. Gregg Kasting initially treated plaintiff for a work-related repetitive use injury to her hands, neck, and shoulders as part of her workers' compensation claim. AR at 435-39, 440-44. On that same day, bilateral hand x-rays were performed on plaintiff, which revealed normal findings. *See id.* at 309-10. Thereafter, Dr. Kasting diagnosed plaintiff with carpal tunnel syndrome and should sprain/strain. *Id.* at 438. Dr. Kasting reported that there was no light duty work available, and that he will place her off work after discussing with her employer. *Id.* at 443. Shortly thereafter, on January 14, 2015, Physician's Assistant Allan Traylor reported that plaintiff was "currently on modified duty," and that "light duty [was] being accommodated." *Id.* at 453. In a follow-up visit on April 20, 2015, Traylor again reported that light duty was being accommodated, and that plaintiff "will continue with modified work duties as directed." *Id.* at 537, 540.

### 2. Dr. Alarick Yung

On May 11, 2015, Dr. Alarick Yung, a hand surgeon, performed an initial hand surgical evaluation of plaintiff. *Id.* at 314-25. Upon examination, Dr. Yung found that plaintiff has slight hyperextension of the left middle finger at the DIP joint along with some ulnar deviation, but no swelling or erythema. *Id.* at 319. Dr. Yung also found plaintiff has intact sensibility to both hands, and no other

deformity, including no atrophy, no triggering, intact sensibility, negative Tinel's sign to both carpal tunnels, and negative Durkan's sign to both wrists. *Id.* Dr. Yung diagnosed plaintiff with bilateral carpal tunnel syndrome, right shoulder pain, and bilateral hand arthritis. *Id.* at 320. Plaintiff received a steroid injection to the left carpal tunnel. *Id.* Dr. Yung opined that plaintiff could perform modified duty with both hands, but "no heavy or repetitive gripping," and "no lifting, pulling, or pushing more than 5 pounds." *Id*.

On June 8, 2015, Dr. Yung examined plaintiff and reported the following observations: there was no swelling to either hand; there was a Boutonniere-type deformity to her left little finger with hyperextension at the DIP joint as well as some radial deviation, but she can make a full fist with both hands; there was intact sensibility in both hands; negative Tinel's sign at the carpal tunnel; negative Durkan's sign at both wrists; no triggering; and her right hand had a normal appearance. *Id.* at 583. Dr. Yung also noted that plaintiff "flatly refuses any sort of carpal tunnel release surgery," because many people she has known who have had them have not done well. *Id.* at 582. Dr. Yung opined that plaintiff is "likely to be a qualified injured worker" with "permanent prophylactic work restrictions," and has the same work restrictions as indicated on her previous visit. *See id.* at 584.

In a permanent and stationary report dated July 20, 2015, Dr. Yung declared that plaintiff is permanent and stationary with regard to her bilateral carpal tunnel syndrome, because she "flatly refuse[d] any carpal tunnel release surgery." *Id.* at 767. Dr. Yung again opined that plaintiff has "[p]ermanent prophylactic work restrictions with bilateral upper extremities," and restricted her to "[n]o lifting, pulling, pushing more than 5 pounds," and "[n]o heavy or repetitive gripping." *Id.* at 768.

### 3. Dr. Andrzej Bulczynski and Dr. Nouriel Niamehr

On July 2, 2015, Dr. Andrzej Bulczynski, an orthopedic surgeon, conducted an initial orthopedic evaluation of plaintiff's shoulder pain at the request of Dr. Yung. *Id.* at 332-47, 600-610. Dr. Bulczynski noted there is no asymmetry, deformity, or misalignment in plaintiff's right shoulder, no soft tissue swelling, and that her muscle tone was within normal limits. *Id.* at 339. Dr. Bulczynski also reported that the diagnostic testing of plaintiff's bilateral upper extremities in March 2015 by Dr. Frank Lin revealed very mild bilateral carpal tunnel syndrome. *Id.* at 342. Dr. Bulczynski diagnosed plaintiff with right sided radiculitis and right shoulder impingement, and recommended an MRI of the right shoulder and physical therapy twice a week for three weeks. *Id.*

In a subsequent progress report on July 30, 2015, Dr. Bulczynski noted that plaintiff reported minimal right shoulder pain, and 6/10 pain in the right side of her neck. *Id.* at 350, 631. Upon examination of plaintiff's cervical spine, Dr. Bulczynski reported plaintiff's posture was normal, her muscle tone was within normal limits without atrophy, and no soft tissue swelling was indicated, except for mild tenderness over the trapezius muscle. *Id.* at 351, 632. Additionally, plaintiff's cervical spine motions were accomplished without any complaints of pain during the maneuvers, there was no evidence of radiating pain to the upper extremities on cervical motion, and neurological function of the bilateral upper extremities was intact. *Id.* at 351-52, 632-33. Based on an MRI of plaintiff's right shoulder, Dr. Bulczynski diagnosed plaintiff with right-sided radiculitis, right shoulder impingement, low-grade bursal sided supraspinatus/infraspinatus tear, and subacromial bursitis. *Id.* at 355, 636. Dr. Bulczynski's August and October 2015 examinations revealed similar findings. *Id.* at 650-53, 658-60.

In June and August 2015, Dr. Nouriel Niamehr, physical medicine and rehabilitation specialist, repeatedly noted that plaintiff's hand pain, weakness, and

numbness were most likely cervical, and were not caused by her "very mild carpal tunnel syndrome." *Id.* at 360, 364, 665, 688. Dr. Niamehr also diagnosed plaintiff with "boutonniere deformity of the left third digit [and] mild degenerative changes in the right shoulder which could not be causing the severity of her current symptoms." *Id.* Dr. Niamehr further noted that plaintiff's symptoms are most consistent with nerve root irritation from the cervical spine, and diagnostic studies of the shoulder and hand failed to show the cause of her level of severity of symptoms. *Id.* at 361. Dr. Niamehr indicated in her treatment plan that plaintiff should continue using Voltaren gel, and requested another cervical MRI. *Id.* In October 2015, Dr. Niamehr reported the same diagnoses, and indicated that plaintiff was in no acute distress. *Id.* at 665.

In a subsequent progress report in June 2016, Dr. Niamehr reported that plaintiff had decreased sensation in bilateral hands and received a positive Spurling result, but her diagnoses remained largely the same as reported in her previous examinations. *Id.* at 688. Dr. Niamehr again referred plaintiff for a cervical MRI, and recommended that plaintiff continue using Voltaren gel, Tylenol, and Cyclobenzaprine. *Id.* In July 2016, Dr. Niamehr reported that plaintiff complained of "neck pain radiating down the arms and pain in the hand and bilateral trapezius pain," and diagnosed plaintiff with cervical radiculopathy, cervical stenosis, and cervical facet arthropathy with hand pain, weakness, and numbness secondary thereto based on a cervical MRI. *Id.* at 1171-72, 1186-87. Dr. Niamehr also reported plaintiff's previous diagnoses, including her very mild carpal tunnel syndrome, boutonniere deformity of left third digit, and mild degenerative changes in the right shoulder. *Id.* at 1187. Plaintiff was advised to continue taking her previous medications, and was referred to physical therapy. *Id.* at 1188.

### 4. The State Agency Physicians

Dr. L. Kiger and Dr. F. Greene, state agency physicians, reviewed plaintiff's medical records as of March and October 2016 respectively. *See id.* at 55-66, 68-82. Based on a review of the records, both state agency physicians diagnosed plaintiff with spine disorder and carpal tunnel syndrome. *Id.* at 61, 75. The state agency physicians opined that plaintiff had the RFC to: lift and carry 10 pounds frequently and 20 pounds occasionally; stand and walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; frequently push and/or pull; frequently perform overhead reaching, handling, fingering, and feeling with the bilateral upper extremities; and occasionally crawl and climb ladders, ropes, and scaffolds. *Id.* at 62-63, 77-78.

### 5. The ALJ's Findings

The ALJ determined that plaintiff had the RFC to perform light work with the limitations that she could: occasionally crawl and climb ladders, ropes, and scaffolds; occasionally push and pull with the bilateral upper extremities; and frequently handle, finger, and feel bilaterally. *Id.* at 90. Light work as defined in 20 C.F.R. § 404.1567(b) involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.

In reaching his RFC determination, the ALJ gave significant weight to the opinions of the state agency physicians, finding that their opinions were consistent with the objective medical evidence and plaintiff's statements regarding her activities. *Id.* at 95. The ALJ also found that the findings of Dr. Niamehr and Dr. Bulczynski were consistent with the ALJ's RFC determination and based on objective evidence. *Id.* The ALJ gave no weight to the opinion of Dr. Yung limiting plaintiff to lifting, pulling, and pushing no more than five pounds, on the bases that his opinion was: inconsistent with the findings of other treating sources; inconsistent with Dr. Yung's own clinical findings of plaintiff's bilateral ability to

make a fist, intact sensation, and negative Tinel's and Durkan's signs; and inconsistent with plaintiff's conservative treatment. *Id.*

To reject a treating physician's opinion that is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Lester*, 81 F. 3d at 830. Here, Dr. Yung's opinion that plaintiff is limited to "lifting, pulling, and pushing no more than five pounds" is contradicted by the opinions of state agency physicians Dr. Kiger and Dr. Greene, who opined that plaintiff had the RFC to lift and carry 10 pounds frequently and 20 pounds occasionally. *Compare* AR at 320, 768 *with* 62-63, 77-78. Thus, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Yung's opinion.

The ALJ's first reason for rejecting Dr. Yung's opinion limiting plaintiff to lifting, pulling, and pushing no more than five pounds – that it was inconsistent with the findings of other treating sources – was not supported by substantial evidence. *Id.* at 95. Although the ALJ found that the opinions of Dr. Niamehr and Dr. Bulczynski were consistent with the ALJ's RFC determination, their findings do not appear to conflict with Dr. Yung's opinion. *See id.* at 95. Specifically, while the ALJ pointed out that Dr. Niamehr repeatedly noted plaintiff's bilateral hand pain, weakness, and numbness were not caused by her "very mild bilateral carpal tunnel syndrome," Dr. Niamehr indicated that her symptoms were likely cervical, and diagnosed plaintiff with cervical radiculopathy based on a cervical MRI of plaintiff. *See id.* at 360, 364, 665, 688, 1171-72, 1187. Dr. Niamehr also did not provide any work limitations for plaintiff on the basis that "she [was] retired since she was terminated from work." *Id.* at 688, 1188. Further, while Dr. Bulczynski's examination of plaintiff's cervical spine revealed largely normal findings, he ultimately diagnosed plaintiff with right-sided radiculitis, right shoulder impairment, low-grade bursal sided supraspinatus, infraspinatus tear, and

subacromial bursitis based on an MRI of plaintiff's right shoulder. *See id.* at 636. Dr. Bulczynski likewise did not provide any work limitations for plaintiff, and instead deferred to Dr. Yung's opinion regarding plaintiff's work status. *See id.* As such, the ALJ's first reason for discounting Dr. Yung's opinion was not a specific and legitimate reason supported by substantial evidence since there are no apparent inconsistencies between Dr. Yung's opinion and the findings of Drs. Niamehr and Bulczynski.

But the ALJ properly discounted Dr. Yung's opinion on the basis that it was inconsistent with his own clinical findings of plaintiff's bilateral ability to make a fist, intact sensation, and negative Tinel's and Durkan's signs. *See id.* at 95; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding the ALJ properly discredited a treating physician's opinion where it was incongruent to the physician's medical records); *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"). Plaintiff argues that Dr. Yung's opinion is supported by his other findings of hand arthritis and shoulder impairment. *See* P. Mem. at 6. But on examination, Dr. Yung observed that plaintiff was able to make a full fist with both hands without any evidence of triggering or atrophy, and both her wrists were stable, not swollen, and nontender. AR at 766. Plaintiff's forearms and elbows were also normal. *Id.* Further, Dr. Yung did not examine plaintiff's shoulders, and declined to make any treatment plans for plaintiff's alleged right shoulder pain, because that was "not a body part [he] treat[s]," and instead, referred her to an orthopedist. *See id.* at 836. Thus, the inconsistencies between Dr. Yung's opinion regarding plaintiff's upper extremity limitations and his clinical findings is a specific and legitimate reason supported by substantial evidence for discounting his opinion.

The ALJ additionally rejected Dr. Yung's opinion because conservative

treatment was prescribed, and no surgery was performed. *Id.* at 95. As the ALJ correctly noted, Dr. Yung reported that plaintiff was "declared permanent and stationary with regard to her bilateral carpal tunnel syndrome" because she "flatly refuse[d] any carpal tunnel release surgery." *See id.* at 91, 767. For this reason, Dr. Yung only prescribed plaintiff with a refill for Voltaren gel (nonsteroidal anti-inflammatory drug), Flexeril (muscle relaxant), and extra strength Tylenol for her symptoms. *Id.* at 767. The conservative treatment prescribed to plaintiff was inconsistent with Dr. Yung's significant upper extremity limitations, which amounts to another specific and legitimate reason supported by substantial evidence to discount Dr. Yung's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding the ALJ provided an adequate reason for rejecting the treating physician's opinion where the physician prescribed a conservative course of treatment that was inconsistent with a finding of disability).

Plaintiff argues that surgery was not medically necessary and she was concerned that she would not be able to bend her right middle finger as a result of the surgery, and thus her failure to pursue that option is not a sufficient reason to discount Dr. Yung's opinion. *See* P. Mem. at 6; AR at 409-10. But plaintiff's argument that surgery was not medically necessary further supports the ALJ's finding that conservative treatment was sufficient to address plaintiff's concerns, and that such treatment is inconsistent with Dr. Yung's upper extremity limitations. Plaintiff also argues that she continued to treat with Dr. Niamehr, who requested an MRI of her cervical spine and recommended no other treatment. *See* P. Mem. at 6. But an MRI is simply a diagnostic technique, and does not qualify as any particular kind of treatment. Further, contrary to plaintiff's assertion, Dr. Niamehr recommended other conservative treatment even after reviewing plaintiff's cervical MRI. For example, Dr. Niamehr recommended that plaintiff continue using Voltaren gel, Tylenol, and Cyclobenzaprine (muscle relaxant), and referred her to

physical therapy. *See* AR at 1188. The fact that Dr. Niamehr also prescribed conservative treatment likewise supports the ALJ's finding that plaintiff's treatment was inconsistent with Dr. Yung's opinion regarding plaintiff's bilateral upper extremity limitations.

Accordingly, while the ALJ's first reason for discounting Dr. Yung's opinion was not supported by substantial evidence, the ALJ provided other specific and legitimate reasons supported by substantial evidence for discounting Dr. Yung's opinion.

**B.    The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Testimony**

Plaintiff also argues the ALJ failed to provide clear and convincing reasons to discount plaintiff's subjective symptom testimony. *See* P. Mem. at 6-8.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's testimony, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti*, 533 F.3d at 1039;

*Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 94. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. The ALJ discounted plaintiff's testimony because plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* In particular, the ALJ discounted plaintiff's subjective testimony, because: (1) evidence from medical and non-medical sources, including plaintiff's own statements to medical providers, contradict plaintiff's claimed symptoms; (2) she performed activities of daily living consistent with the determined RFC and inconsistent with her testimony; (3) her medical visits occurred at intervals inconsistent with the urgency of treatment that would be anticipated if her limitations were as severe as alleged; (4) she did not comply with her medical treatment recommendations, and declined carpal tunnel releases; and (5) she was able to return to work after her alleged disability onset date in January 2015. *See id.*

The ALJ's first reason for discounting plaintiff's testimony was that it was not entirely consistent with the objective medical evidence. *Id.* Specifically, the ALJ indicated that plaintiff was consistently noted by all treating sources to be "fully oriented" and in "no acute distress" despite her subjective symptoms of bilateral hand pain, weakness, and numbness, which Dr. Niahmehr indicated was not related to her very mild bilateral carpal tunnel syndrome. *See id.* at 94, 319, 337, 350, 360, 583, 665, 766, 1187. The ALJ also noted that the EMG and nerve conduction study of plaintiff's bilateral upper extremities assessed by Dr. Lin in March 2015 revealed very mild bilateral carpal tunnel syndrome, and the hand x-

rays in June 2015 were negative. *Id.* at 309, 342, 376. As such, the ALJ here properly considered the inconsistency between plaintiff's testimony and the objective medical evidence in conjunction with other factors in rejecting her testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence is a factor the ALJ can consider in credibility analysis).

The ALJ's second reason for rejecting plaintiff's testimony was that her activities of daily living were inconsistent with the alleged severity of her symptoms. *See id.* at 94. The ALJ noted that plaintiff reported she was able to cook, perform light housekeeping, do laundry, socialize, drive an SUV, travel, and handle finances, and that such activities were consistent with his RFC determination. *Id.* The ALJ also noted that plaintiff went outside daily, shopped for groceries and clothing in stores two times per week for two hours, regularly attended church and family gatherings, and she had a fair ability to handle stress and changes in routine. *Id.* at 93-94. The ALJ reasonably considered plaintiff's ability to perform daily activities in finding that plaintiff's subjective testimony was inconsistent with the alleged severity of her symptoms. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ properly rejected plaintiff's testimony where the record reflected that plaintiff engaged in normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances).

The ALJ also properly explained that plaintiff's "[m]edical visits occurred at intervals inconsistent with the urgency of treatment that would be anticipated if limitations were as severe as alleged, with a large gap in treatment by specialists from 2016 to present." *See* AR at 94; SSR 96-7p ("the [plaintiff]'s statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). In 2015, plaintiff saw various physicians related to her workers' compensation claim. *See* AR 90-92. But as the ALJ noted, from 2016 on,

plaintiff's treatment records do not indicate that she received any consistent treatment with any treating physician. *See id.* at 92-93. Plaintiff saw Dr. Niamehr in June and July 2016, who referred her to physical therapy for three weeks and asked her to follow up in one to two months or as needed, but nothing in the record suggests that plaintiff actually followed up with Dr. Niamehr or participated in physical therapy. *See id.* at 688, 1188-89. Additionally, although Chiropractor Nicole Lopez, D.C., issued a letter on May 24, 2018 stating she had treated plaintiff since January 2015 and that plaintiff is completely disabled, Lopez does not qualify as an acceptable medical source, and she did not provide any treatment notes supporting her treatment history. *See id.* at 93, 1147-48; 20 C.F.R. § 404.1513(d)(1) (chiropractors are not acceptable medical sources). The record also contains some treatment notes from 2016 and 2017, but they document treatment for isolated symptoms unrelated to her severe impairments. *See* AR at 1402-46. As such, the ALJ properly found that the level or frequency of plaintiff's treatment was inconsistent with the alleged severity of her symptoms. *See Hill v. Comm'r of Soc. Sec. Admin.*, 289 F. App'x 217, 219 (9th Cir. 2008) (finding the ALJ reasonably discounted plaintiff's testimony where he noted that the number and frequency of doctor visits were inconsistent with the alleged severity of claimant's impairments, among other reasons).

In addition, the ALJ noted that plaintiff failed to comply with her treatment recommendations as a reason for discounting her testimony. AR at 94. As discussed above, Dr. Yung reported that plaintiff was "declared permanent and stationary with regard to her carpal tunnel syndrome" because she "flatly refuse[d] any carpal tunnel release surgery." *Id.* at 767. Although it was later determined that the carpal tunnel release surgery was not medically necessary, Dr. Yung recommended the surgery to relieve the pain in plaintiff's bilateral upper extremities despite having reviewed the EMG and nerve conduction study, which

demonstrated very mild bilateral carpal tunnel syndrome. *See id.* at 767. Plaintiff's non-compliance with Dr. Yung's treatment recommendation was a clear and convincing reason to discount her testimony. *See Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated . . . .") (citation omitted).

Moreover, the ALJ further noted that the record indicates that plaintiff was working on modified duties in 2015 despite her allegation that she became disabled on January 7, 2015. *See* AR at 94. Plaintiff argues the ALJ misinterpreted the record in finding that plaintiff continued to work after her alleged disability onset date. *See* P. Mem. at 8. Specifically, plaintiff asserts that on January 12, 2015, Dr. Kasting indicated there was no light duty work available for plaintiff, and that he would place her off work after discussing with her employer. *See id.* (citing AR at 443). The record is unclear as to whether Dr. Kasting actually placed plaintiff off of work. But as the ALJ pointed out, on January 14, 2015, Physician's Assistant Allan Traylor reported that plaintiff was "currently on modified duty" and that "[l]ight duty [was] being accommodated." AR at 94, 453. Subsequently, on April 20, 2015, Traylor again reported that light duty was being accommodated (*see id.* at 537), and that plaintiff "will continue with modified work duties as directed." *Id.* at 540. It was thus reasonable for the ALJ to consider Traylor's reports given that they were issued after Dr. Kasting's report and consistently documented that plaintiff was on modified light duty in January and April 2015. As such, the ALJ reasonably determined that plaintiff's ability to continue working after her alleged disability onset date was inconsistent with her subjective testimony. *See Huizar v. Comm'r of Soc. Sec.*, 428 F. App'x 678, 680 (9th Cir. 2011) (ALJ reasonably found that claimant's "ability to continue working was inconsistent with her

testimony about the severity of her impairments"), citing 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did").

In sum, the inconsistencies between plaintiff's testimony and the objective evidence, in conjunction with her ability to perform various daily activities, her inconsistent treatment and non-compliance with medical recommendations, and her ability to continue working after her alleged disability onset date amount to clear and convincing reasons to reject her subjective testimony

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 23, 2021

SHERI PYM
United States Magistrate Judge